IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| STEVEN KEITH CALIM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:02-1399 |
| | ) | |
| | ) | |
| DR.. MAZZEO, *et al.*, | ) | |
|     Defendants. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On December 3, 2002, Plaintiff, an inmate then in confinement at FCI Beckley, Beaver, West Virginia,[1] and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] (Doc. No. 1.) By Standing Order also filed on December 3, 2002, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 6.)

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious,

---

[1] The Federal Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from their custody on February 11, 2004.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 -328, 109 S.Ct. at 1833. A complaint is malicious when it contains allegations which the plaintiff knows to be false, it is a part of a longstanding pattern of abusive and repetitious lawsuits or it contains disrespectful or abusive language. See In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988). A complaint fails to state a claim upon which relief can be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987).

## FACT AND PROCEDURE

On March 22, 2000, Plaintiff plead guilty to Count One of a four-Count Indictment, charging him and his co-defendants, with manufacturing quantities of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. United States v. Calim, Criminal Case No. 2:99-00401-01 (E.D. La. Oct. 11, 2000). The District Court sentenced Plaintiff on October 11, 2000, to a 60 month term of imprisonment, to be followed by a five year term of supervised release. Id. Plaintiff was designated by the Federal Bureau of Prisons [BOP] to serve his sentence at FCI Beckley, where he arrived on December 14, 2000. (Doc. No. 7 at 2.)

Pursuant to the sentencing Judge's recommendation, Plaintiff enrolled in the BOP's Residential Drug Abuse and Treatment Program [RDAP] on September 7, 2001. (Doc. No. 7 at 2.) By Notice dated September 7, 2001, Plaintiff was advised by A.M. Mazzeo, RDAP Coordinator, that he met the admissions criteria for the program. (Doc. No. 7 at Exhibit A.) However, he was notified that it did not appear that he was entitled to early release after completion of the program for the following reasons: "Detainers, assault in front of legal review." (Exhibit A at 3.) The Notice was accompanied by an Agreement of Commitment, which set forth Plaintiff's obligations to the program. (Exhibit A at 3-4.) Both the Notice and Agreement reflect the signatures of Plaintiff and S. Dorsey, B.S. (Id.)

On March 28, 2002, Plaintiff was issued an infraction for violating the RDAP basic principles of responsibility, caring, and willingness. (Doc. No. 7 at Exhibit B.) Specifically, Plaintiff failed to complete homework assignments for his Wellness Class, in violation of RDAP rules and regulations. (Id.) As a repercussion, Plaintiff was required by April 1, 2002, to complete the assigned homework, write a five page paper explaining why he did not complete the homework, and present the paper to his Wellness Class. (Id.) Plaintiff was advised that failure to complete the assignment would result in an additional infraction and that he may be expelled after receiving two infractions, and would be expelled from the program after four infractions. (Id.)

On April 12, 2002, Plaintiff received his second infraction for violating the following RDAP basic principles: honesty, respect, willingness, responsibility, caring, humility, and tolerance. (Doc. No. 7 at Exhibit C.) Specifically, Plaintiff failed to attend the Alcoholics Anonymous [AA] and Narcotics Anonymous [NA] meetings twice a month, as stipulated in his treatment plan. (Id.) Consequently, Plaintiff was required to attend the AA/NA meetings twice a week for the remainder

of the program. (Id.) He was again advised that failure to attend the meetings would result in an additional infraction and that he could be expelled after two infractions. (Id.)

On June 27, 2002, Plaintiff received this third infraction for violating the following RDAP basic principles: responsibility, respect, caring, objectivity, humility, confidentiality, tolerance, and willingness. (Doc. No. 7 at Exhibit D.) Specifically, the infraction reported that Plaintiff

> made reference to [his] criminal lifestyle, glorifying the effects of [his] substance abuse to other participants in the class. You continue to make attempts to intellectualize your comments in relation to your substance abuse and criminal lifestyle. As well, you continue to challenge staff by asking irrelevant questions in an apparent attempt to frustrate or confuse staff. This behavior is unacceptable.

(Id.) To assist his recovery in view of his behavior, Plaintiff was required by June 3, 2002, to complete a self-analysis about the specific behavior, read certain thinking barriers, and agree to be placed back one step (cohort) to further his treatment and resolve recurring behaviors. (Id.) Plaintiff was again advised of the consequences of not completing the assignment and the consequences of incurring infractions. (Id.)

Plaintiff filed his Complaint, Memorandum in support, and Affidavit in this matter on December 3, 2002, alleging violations of his Fifth and Eighth Amendment constitutional rights. (Doc. Nos. 1, 3, 7.) Plaintiff names as Defendants the following persons employed at FCI Beckley in connection with RDAP: Dr. A.M. Mazzeo, DAP Coordinator; Eric Woolwine and William Carnell, Drug Treatment Specialists; and the RDAP Staff, collectively. (Doc. No. 1.) Plaintiff alleges that the Defendants' failure to remove the infractions from his record after he complied with the assignments constitutes an unjustified deprivation because after a fourth infraction, he will be expelled from the program. (Doc. No. 7 at 3.) Plaintiff further alleges that he was denied due process when he was not given an opportunity to prepare a defense and when he was not provided counsel.

(Id. at 4, 6.) With respect to the second infraction, he alleges that he had no prior knowledge of the particular meeting he was required to attend because the meeting dates were not posted. (Id.) He states that after he complained about the lack of notice, the Defendants began posting meeting dates. (Id.) He further alleges that the third infraction resulted from an act of personal retaliation by Defendant E. C. Woolwine. (Doc. No. 7 at 4-5.) He states that on a prior occasion he had advised Defendant E.C. Woolwine that he was "a POW of the War on Drugs in this country," a statement to which Mr. Woolwine took offense. (Doc. No. 7 at 5.) Finally, Plaintiff alleges that Defendants threatened him with expulsion from the program if he challenged his infractions through the BOP administrative remedy process. (Doc. No. 7 at 7.) Plaintiff seeks declaratory and compensatory relief. (Doc. No. 7 at 7-8.)

On March 7, 2003, Plaintiff filed his "Motion for Leave to File an Amended Complaint" and proposed Amended Complaint. (Doc. No. 10.) By Order entered August 29, 2003, Plaintiff's Motion was granted. (Doc. No. 15.) In his Amended Complaint, Plaintiff names the following additional Defendants: FCI Beckley Warden Williamson; Case Managers Albright, Ballard, and Metzger; and Drug Treatment Specialist Dorsey. (Doc. No. 17.) Furthermore, he alleges the following constitutional violations:

> misuse (and abuse) of authoritative powers, retaliation for exercise of free speech, denial of due process, reckless and deliberate indifference, cruel and unusual punishment, discrimination, assault and continued false imprisonment.

(Doc. No. 17 at 2.) Specifically, he alleges that Defendants Dorsey, Carnell, and E.C. Woolwine, issued him infractions without meaningful justification and evidence supporting the infractions. (Doc. No. 17 at ¶¶ 3-5.) He avers that the Defendants' actions resulted in Plaintiff's expulsion from the program and his denied early release consideration under 18 U.S.C. § 3621(e). (Id. at ¶ 6.)

Plaintiff avers that Defendant Dr. Mazzeo "formulated, directed, condoned and consciously ignored the known unconstitutional acts of her subordinates." (Id. at ¶ 8.) With respect to Defendants Albright, Ballard, and Metzger, Plaintiff alleges that they conspired to have him expelled from the program and "verbally threatened and assaulted" him. (Id. at ¶ 9.) Finally, he alleges that Defendant Warden Williamson "is personally and officially liable for abuse of power of his office and official position which resulted in the deprivation of [his] constitutional rights." (Id. at ¶ 10.) Plaintiff requests that the Court enter an Order directing the Defendants to restore his eligibility for early release under 18 U.S.C. § 3621(e) and seeks compensatory and punitive damages. (Id. at 3-4.)

## ANALYSIS

The assertions presented in Plaintiff's Complaint and Amended Complaint of violations of his constitutional rights must be considered under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The undersigned finds that Plaintiff has not stated, and cannot state, a cognizable claim against Defendants under Bivens. A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury

6

is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.

### 1.    Plaintiff's Fifth Amendment Claim

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston, 946 F.2d at 343 (emphasis added). To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Coll. v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a right protected in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(*quoting* Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709); Gaston, 946 F.2d at 343 (An inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement.") The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . .,

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Id.

Plaintiff contends that he was denied due process when he was expelled from RDAP and declared ineligible for early release consideration. He further contends that he was denied due process when the Defendants failed to (1) remove the infractions from his record after he satisfied the program's obligations, (2) afford him the opportunity to prepare a defense and appoint him counsel, and (3) notify him of the AA/NA meeting times with respect to his third infraction. Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process.").

Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his

liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program.[3] 18 U.S.C. § 3621(e); see also Lopez v. Davis, 531 U.S. 230, 232, 121 S.Ct. 714, 718, 148 L.Ed.2d 635 (2001). The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[4] See Lopez, 531 U.S. at 240, 121 S.Ct. at 721 (Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau

---

[3] 18 U.S.C. § 3621(e)(2) provides as follows:

**(2) Incentive for prisoners' successful completion of treatment program. –**
    **(A) Generally.** – Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.
    **(B) Period of custody.** – The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

[4] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

9

final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance, and whether to grant or deny eligible inmates a sentence reduction under § 3621(e). See Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Title 28, C.F.R. § 550.56(d)(2) provides that the RDAP coordinator "may remove an inmate from the program based upon disruptive behavior related to the program." Ordinarily however, the inmate must be provided with at least one warning prior to removal. 28 C.F.R. § 550.56(d)(2)(2004).[5] Plaintiff incurred three infractions, or warnings, before his expulsion from the program, and therefore, was given appropriate warning that his conduct could result in his expulsion. Although he complied with the consequences of incurring the infractions, by completing the appropriate assignments, each infraction remained on his record and contributed to the total number of four, resulting in his expulsion. To expunge the earlier infractions after compliance with the penalties therefor, would defeat the requirement that inmates receive no more than four infractions.

---

[5] Immediate removal from RDAP may be warranted when a Disciplinary Hearing Officer finds, pursuant to an Incident Report, that the inmate used or possessed alcohol or drugs, was violent or threatened violence against staff or another inmate, or committed a level 100 prohibited act. 28 C.F.R. § 550.56(d)(2)(2004).

Plaintiff was provided a copy of the RDAP Agreement of Commitment, in which he acknowledged that he would, *inter alia*, obey all institutional rules, attend program functions on time, and behave in an appropriate manner. The regulations do not provide that inmates must be afforded a hearing with respect to each infraction.[6] Rather, the coordinator, in his discretion, may remove an inmate from the program based upon disruptive behavior related to the program. 28 C.F.R. § 550.56(d)(2)(2004). While Plaintiff claims that he lacked knowledge of meeting dates with respect to his third infraction, expulsion was permitted pursuant to RDAP rules after his second infraction. Accordingly, Plaintiff possessed no liberty interest in relation to his continued participation in RDAP.

Furthermore, Petitioner does not possess a constitutionally protected expectation interest in receiving a one-year sentence reduction. Such a subjective expectation does not arise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice -- is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before

---

[6] The Supreme Court has determined that to comport with the requirements of due process, prison officials must provide the following procedural safeguards to a prisoner when conducting disciplinary hearings: (1) written notice of the charged violations at least twenty-four hours prior to the prisoner's appearance before the disciplinary official, (2) a written statement by the disciplinary official as to the evidence relied on and the reasons for the disciplinary action, (3) the right to call witnesses and present documentary evidence in the prisoner's defense, (4) non-attorney representation when the prisoner is illiterate or the disciplinary proceeding involves complex issues, and (5) a neutral and detached hearing body. *Wolff v. McDonnell*, 418 U.S. 539, 564-71, 94 S.Ct. 2963, 2979-82, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *Segarra v. McDade*, 706 F.2d 1301, 1304 (4th Cir. 1983). Because Plaintiff was not entitled to a disciplinary hearing upon each infraction, he was not entitled to each of the *Wolff* procedural safeguards. Accordingly, the undersigned finds no merit to his claims that he was denied the right to counsel and the opportunity to prepare a defense.

procedural due process rights are triggered."). Neither § 3621(e), the BOP's Program Statements (P.S. 5162.02 and 5330.10), nor the Code of Federal Regulations (28 C.F.R. § 550.58), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in early release. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Petitioner does not possess a statutorily protected expectation interest in continued placement in RDAP or to early release.[7]

Finally, the BOP's expulsion of Petitioner from RDAP does not constitute an "atypical and significant hardship" on Petitioner in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 482, 115 S.Ct. at 2299; Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998)(Issues of housing and transfers are issues which occur within the "day-to-day management of prisons."). Because nothing in the record indicates that Petitioner's conditions of confinement at FCI Beckley were atypical or resulted in a significant hardship, the undersigned finds that Petitioner has failed to demonstrate a due process violation. Accordingly, Petitioner does not possess a constitutionally protected interest in continued participation in any drug treatment programs or in early release.

### 2. **Plaintiff's Eighth Amendment Claim.**

Considering Plaintiff's claims as alleging prohibited punishments under the Eighth Amendment of the United States Constitution, it is clear that the circumstances alleged do not

---

[7] It is significant to note that Plaintiff was advised in his initial Notice of RDAP qualification, dated September 7, 2001, that regardless of program completion, he was provisionally determined ineligible for early release due to a detainer placed against him and due to an assault in front of legal review. (Doc. No. 7, Exhibit A at 3.)

present a viable Eighth Amendment claim. The Eighth Amendment prohibits cruel and unusual punishment. As a general matter, prohibited punishments under the Eighth Amendment include those which involve the "unnecessary and wanton infliction of pain," and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation); The Eighth Amendment "does not mandate comfortable prisons." Rhodes, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101

S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), *citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka, 71 F.3d at 166(*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991), cert. denied, 510 U.S. 1096, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment."). The touchstone is the health and safety of the inmate. Plaintiff in this case must therefore allege in the first place and eventually establish a "sufficiently serious" deprivation of life's necessities and medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. To establish the subjective component of deliberate indifference, Plaintiff

14

must allege and prove each Defendant's consciousness of the risk of harm to him. See Farmer, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish respecting each Defendant that he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

Plaintiff's expulsion from RDAP does not constitute a sufficiently serious deprivation under an objective standard. Furthermore, Plaintiff cannot establish that the Defendants acted with deliberate indifference to his health and safety in expelling him from the program. Although he complains that while enrolled in the program he was subjected to Defendants' Albright, Ballard, and Metzger's verbal abuse, allegations of verbal harassment do not arise to the level of unnecessary and wanton infliction of pain constituting cruel and unusual punishment within the meaning of the Eighth Amendment. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987). The verbal abuse of which Plaintiff complains consisted of threatening language "to not use the Administrative Remedy process to contest [his] program infractions." (Doc. No. 8, Exhibit G.) Additionally, upon learning that Plaintiff intended to challenge his infractions through the Administrative Remedy process, Defendant Carnell stated: "If you want to know where this will get you? look at the record of inmates who were in this program who filed complaints against us, they are no longer here." (Doc. No. 7 at 7.) Though Defendants' language was improper, the use of such language, standing alone, does not rise to the level of a constitutional deprivation under the Eighth Amendment. See Morrison v. Martin, 755 F.Supp. 683, 687 (E.D. N.C.), aff'd, 1990 WL 174653 (4th Cir. Nov. 13, 1990). Nevertheless, an officer's threats of physical harm or conduct intended to intimidate Plaintiff from exercising a constitutional right, accompanied

15

with action intended to carry out the threat, may constitute a valid Eighth Amendment claim. See Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. Oct. 5, 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979). However, "[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Morrison, 755 F.Supp. at 687. The Court finds that Plaintiff has not demonstrated that Defendants' language was accompanied by any conduct intended to threaten Plaintiff with harm or to prevent Plaintiff from exercising a valid constitutional right.[8] Furthermore, Plaintiff has no constitutional right to remain free from mental anguish and emotional distress. See Grandstaff v. City of Borger, Tex., 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987); Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). Accordingly, Plaintiff has failed to state a claim of mental or verbal abuse, or threats by a correctional officer, for which relief can be granted.

### 3. **Plaintiff's Claims of Retaliation and Conspiracy.**

Plaintiff further contends that the infractions were issued against him only after he told Defendant E.C. Woolwine that he was a Prisoner of War on the War of Drugs, in violation of the First Amendment. Prison officials may not retaliate against inmates for their exercise of a constitutional right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); American Civil Liberties Union of Md, Inc. v. Wicomico

---

[8] It is of significance to note here that federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). "[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick*, 932 F.2d at 729.

County, Md., 999 F.2d 780, 785 (4th Cir. 1993)(*citing* Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claims of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second, that his protected conduct motivated the retaliatory act.

To the extent that Plaintiff alleges retaliation in response to making a comment to Defendant E.C. Woolwine, he has satisfied the first part of the analysis. "The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent, exist in a prison setting."[9] Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 ** 2 (4th Cir. (Md.) Feb. 21, 1989)(unpublished)(*citing* Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Plaintiff has not, however, demonstrated that the infractions filed against him were motivated in any manner by his protected speech. The showing of adversity is an essential element to any retaliation claim. See American Civil Liberties Union v. Wicomico County, 999 F.2d at 785. Plaintiff has not produced any documentation evidencing that Defendant E.C. Woolwine was personally offended

---

[9] The undersigned notes however, that the BOP's grievance procedures are separate from litigation and any failure of the Defendants to comply with the grievance procedures, does not infringe on Plaintiff's constitutional right of access to the courts. *See Flick*, 932 F.2d at 729.

by Plaintiff's comments or that his comments prompted the issuance of the infractions. Plaintiff's bare assertions of retaliation do not establish a claim of constitutional dimension.

Furthermore, the undersigned finds that Plaintiff's conclusory allegations of a conspiracy do not establish a constitutional violation. To allege a claim of conspiracy, Plaintiff must establish the following elements: (1) an agreement between two or more persons, which constitutes the act, and (2) the doing of either an unlawful act or a lawful act by unlawful means. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore, fail to state a cognizable Bivens claim. See Brown v. Angelone, 938 F.Supp. 340, 346 (W.D. Va. 1996). Plaintiff does not allege any facts to establish that Defendants Albright, Ballard, and Metzger formed an agreement to injure him by having him expelled from the program, and his conspiracy claim therefore, does not rise to the level of constitutional magnitude.

### 4. **Plaintiff's Claims of Equal Protection / Discrimination**

Viable equal protection claims are based upon allegations that similarly situated individuals are treated differently without a rational relationship to a legitimate governmental purpose. In order to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff. Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). Plaintiff's allegation that Defendants discriminated against him in issuing the third infraction because Defendants did not issue infractions to other inmates making similar comments as did Plaintiff, does not present a cognizable equal protection claim. Plaintiff does not allege that Defendants had a practice or policy of issuing infractions on the basis of certain criteria or preferring a certain class of inmates over others. Thus,

the undersigned concludes that Plaintiff's claim that Defendants violated his right to equal protection is insufficient and does not state a claim for which relief can be granted. The alleged circumstances therefore, do not present sufficient grounds for relief under Bivens.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** this case with prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff, who is acting *pro se*, at his current address obtained through the Office of Probation: 4169 B Woodsedge Circle, Palm Beach Gardens, Florida 33410.

ENTER: January 25, 2006.

                                                        R. Clarke VanDervort
                                                        United States Magistrate Judge